Good morning. May I please the court? My name is Ashley Conlogue. I have the privilege of representing Deborah Moller. I would like to, first off, thank the panel for the time and hearing our case. Obviously, this case is very important to my client, so I thank you for the time. Council, could you raise the mic? Yeah, raise the mic, please, so that we can hear you. Hazard of being very tall. Sorry. Is that a little bit better? Yes. All right, good. I wanted to focus my argument today on two points, but most importantly, the special relationship exception, which I don't think got the attention that it deserved, either in the court's order or in the briefing, really. And in my opinion, that is essential. Council, can I stop you here for a second? I guess I want to make sure I understand. The district court in this case concluded that the facts here were not remotely similar to Munger. Can you please explain why you believe that they are, whether or not that's an accurate characterization, or whether it is not? Yes. So, what we're really talking about here, then, is the state-created danger exception, Honorable Mendoza, because she was going on to the special relationship exception. Both are at play. I think the state-created danger part of this case is very important. I think it's a critical part. So, I can jump straight to state-created danger, but I agree that Munger is, I think, directly on point. And I think all of the cases that we cited, including Wood and Lum, are all very similar to the facts of this case, and were not given appropriate weight by the district court. So, to tag on to Judge Mendoza's question, the facts of Munger, the officers affirmatively ejected Munger from a bar late at night when outside temperatures were sub-freezing. They knew that Munger was wearing only a T-shirt and jeans, was intoxicated, was prevented by the officers from driving his truck, or reentering the bar. With all due respect, counsel, I mean, I have a lot of trouble seeing. This case is undoubtedly tragic, and Munger is undoubtedly tragic. But I have trouble seeing that the facts are at all similar to the Munger facts. Tell me why you think they are. Yes, thank you. So, in Munger, he was ejected from a place of relative safety. He was indoors, he had adequate protection from the elements, and he was ejected from that place and put in a place where he was more exposed, had more dangerous conditions, where he could have succumbed to any number of hazards, including getting hit by a car and hypothermia, which is what, of course, took him. So, this case is similar in that Mr. Bruning was picked up from a place of relative safety where he had other people around him, a hospital available to him, and was dropped off, essentially, in the middle of an orange grove where he did not have access to any services, did not have any ability to get himself out of that situation. But in Munger, as my good colleague said, the deputies knew that Munger was very obviously drunk. They knew he would succumb to hypothermia, and he was kicked out in sub-freezing temperatures. Here, we have, even if we assume that Officer Fite was aware that he was intoxicated and hallucinating, she didn't kick him out to get a train to run over him. She only kicked him out in the normal temperature, in what he could easily survive. It doesn't seem at all what I would use to meet the standard that we have to have of a constitutional violation. Right. So, I would push back on that a little bit. First of all, I don't believe that the case law requires that she be aware of the actual danger that befell him, any danger. But what is the standard then? The standard under Munger is that, did the officer leave a person in a situation that was more dangerous than they found him under Munger? Does it matter at all that ... So, he wasn't under arrest, right? He was detained. But was there any probable cause to arrest him? Well, an arrest is taken under all of the circumstances available. So, whether or not he was legally arrested, I would say no, but I would say that factually he was arrested. Okay. But he was asking continually to be let out, right? He did ask several times to be let out, but not- The district court said he continued to demand to be let out of the car. Fite replied that she could not let him out in the middle of nowhere and she intended to take him out of the hospital. He then, or he was then threatening to defecate in the car and so she granted his request to let him out. Is there anything about what the district court factually found there that is, in your view, not supported or not an accurate representation of the evidence? Yes. I don't believe he asked to be let out at that location. He had asked to be let out while he was in the car, but it was actually ... He had not asked to be let out in that immediate location. Well, he wanted to get out at a different location, but then when she wouldn't let him out, he says, either you let me out now or I'm going to defecate in your car. And in fact, he said that two or three times. I think he did say he was going to defecate in the car. I don't believe that the evidence says that he demands to be let out at that location. Counsel, I guess I have a question going back to the Munger question, because in Munger, that person that was asked to leave could have gotten into the other open bars, could have gotten to safety and instead chose, for whatever reason, to not do that, to stay in the cold. So they could have, like here, gone a different way or a more safe way. But in Munger, again, that person, for whatever reason, chose to not go to the safety of the other bars that were open at the time. And that's in Munger, in the same way that in this case, this individual went towards the train tracks, which presumably is more dangerous, certainly more dangerous under these circumstances, in the same way that staying in the cold as it was in Munger, the person in that case did exactly the same thing. Isn't that the comparison? Yes, absolutely. I think the district court incorrectly stated that because Bruning had taken steps that increased his danger or did not make good choices, that therefore the county is immunized from this conduct based on her own bad behavior. But we see, both in Munger and also in Wood, criticisms of the decedent's choices. In Wood, I think the court actually expressly criticizes her choices that led to ultimately her rape. And the same in Munger, where he had other options available to him that he presumably did not take, and we don't know why that was. But just because Mr. Bruning took that final step in front of the train does not mean that Deputy Fite did not, prior to that, violate his constitutional rights by putting him in a place where it was more dangerous for him. Well, it's a matter of drawing whether that Munger is enough similar, I guess. But I want to go back to your state-created danger. If we go back to the state-created danger issue, how do you really think that this would be a state-created danger when the only case you cite is Lum versus County of San Joaquin, which is a district court decision for which I can't take any knowledge from? Yes. I believe Lum is instructive because I believe it's very similar on the facts. But just a minute. If I don't have a Supreme Court or a Ninth Circuit decision, I can't say it's a constitutional violation, and Lum is certainly not that. I believe that Lum would help inform the deputy's understanding. Why would it when it's not even authoritative? I'm not saying district courts don't do good work. I was a district court judge. I did it all the time. But I didn't expect that just because I issued the decision that that all of a sudden made it a constitutional violation. It had to go to the Ninth Circuit and they had to say it or the Supreme Court. And that's why I looked all over to find a decision that would be, and not only is this a district court opinion, it's an unpublished district court opinion. Doesn't seem to be authority for a special relationship by state-created danger. Yes. I also believe that I cite the Wood v. Ostrander case for my state-created danger arguments. I believe that one's also factually very similar to what we have in this case and very informative on... Well, for state-created, but I'm talking about the special relationship. Oh, I'm sorry. I thought you were discussing the state-created danger wrong. Well, and you didn't have any other authority that creates this special relationship than Lum? Well, I think Munger, although it's a state-created danger case, can also inform the special relationship because of the issues. And we see this also with the other part of the claim, which we haven't discussed yet, which is whether the JNOV that was granted on the issue of duty, as to whether that duty was created by deputy fight, whether she had a duty to provide medical care or transport him to the hospital as she undertaken. So I think Lum informs that and also Wood helps inform that basically by creating a duty that extends past the interaction between the two. Okay. As you confront Mung-Manel liability, it was interesting that you cited the actions of Deputy Humberto Miranda as the example of prior unconstitutional conduct. Again, in the case, the actions of Deputy Miranda were constitutional. They were. And part of the reason that they were held to be that was that we were not able, that was a case that my firm litigated, by the way. Well, I looked at Pleasant versus Miranda to see what the deal was. And I said to myself, how am I going to find an unconstitutional conduct when Miranda was constitutional out of Pleasant versus Miranda? And part of the reason why that was found in that case was we were unable to establish that pattern or practice that we needed to because we didn't have any other examples at that time. Since then, we've litigated another case and we found two other examples. So I believe that the situation and the facts have changed with respect to- But the pattern and practice, I might have this totally wrong, is giving courtesy rides? Yes. They have a practice of giving courtesy rides. And the Mung-Manel violation comes from providing no instruction or training to officers as to when those are appropriate, where they're allowed to drop people off or not, whether people are able to be intoxicated or not. Basically, they allow for this practice to occur and then provide no oversight or instruction about how to carry it out in a safe manner. That's the Mung-Manel violation. Did you want to reserve? I would like to, yes, sir. All right. Thank you, counsel. Good morning, your honors. Shannon Gustafson for County of San Bernardino and Deputy Fite. The fundamental problem that we have with appellant's argument related to the qualified immunity and the constitutional violation is they're conflating two different doctrines and trying to take what's best out of each one. There's no general duty to protect. There are two exceptions, the special relationship and the state-created danger. And they are distinct and they are separate. And so, you can't take a case from one and a case from other and merge them together for... So, you're really arguing, your argument is that she can take Wood and she can take the other case under state-created danger is not effective because it's a totally different exception. That's your argument? Yes. My argument is when those are state-created danger cases, and I don't think they're similar enough and I can explain why, but you can't take that to say, well, then there was a special relationship created here. All of the special relationship cases, even including Lum that was cited, which was a special relationship case, contain some kind of in custody situation or institutionalization. They're pretrial detainees or they're in a mental hospital. It's not a temporary detainment in a car, even if we were going to call this a detainment as opposed to a courtesy ride. I don't think they're instructive. I'm sorry. Counsel, let's go to the state-created danger argument. Can you please address to me, as far as we know, Deputy Fein knew at the time that Mr. Bruning was withdrawing at the time. She knew that he needed to go or wanted to go to another hospital and was taking him to the hospital. That's point number two. She knew that he was struggling to stand on his feet. In fact, that was the first interaction that she had with him. Three. She also knew that there was a train that was going by at the time that she was letting him out of the car. Four. And that there was a hospital on the other side of the train tracks. Five. She knew all of those things and yes, said, go ahead, because I assume she didn't want him to defecate in the back of his car. That's a very human nature kind of a thing, but she's also a saying. So a judge doesn't want to make decisions, but they're a judge. A police officer has to deal with folks who are difficult. And even when they're in the back of their car. So they left her. She left this individual next to passing train tracks, knowing all of that information. Tell me why that is not a state created danger. I don't agree that that was the state. The state created danger standard is that it has to be an affirmative conduct that leads to a particularized danger that is foreseeable. In all of the cases that have been cited in that regard, the actual injury was the foreseeable consequence of the action. In terms of being kicked out of the bar, and I believe that was the Munger case, he did not have adequate clothing. He was left out in freezing temperatures and he died from those freezing temperatures. Tell me why the fact that he was in full withdrawal, according to what she knew at the time. She knew that, right? I don't agree that that's the record. The record was he stated he was withdrawing, not that he was showing withdrawal symptoms. Okay. She stated, well, the light most favorable to the petitioner here. She knew that, correct? That he stated it, yes. Yes. And that he was unable to stand and really walk. She knew that. She knew that he was walking with a limp. I wouldn't say that he was unable to walk. Counsel, if Judge Mendoza is correct in the light most favorable to the plaintiff or in any light that he had difficulty standing and was unable to walk, would that make it more or less likely that she would know that he would be able to maneuver himself to where the passing train was so as to be able to be hit by the train if she knew he was having mobility issues? I don't think the fact that he was having mobility issues plays into that he's going to jump on a train and then fall underneath it. Well, wouldn't it make it less likely that she would think he could maneuver his way over there and jump in front of a quickly moving train if he was having significant mobility issues? I think it would make it less likely. And I think it also wouldn't be expected that somebody would wait- Isn't it true, counsel, in the same way that in Munger, if someone is freezing, you would want to not stay out in the cold. Instead, you would want to go into the bars. It's the same analysis, isn't it? I don't think it's the same analysis here. I don't think she created more of a danger than what he was already in. He was in the heat, he was underneath a tree, there was traffic nearby, he was choosing to lay under the tree. He's now in a similar area with trees that he can lay under if that's where he wanted to go. He chose to jump onto the train. That's the unforeseeable action. That's not something she could have foreseen under these circumstances. And it's not tied to her letting him out of the car to use the restroom. But what we're really- Oh, sorry. Sorry. But what we're really discussing is whether the facts viewed in the light most favorable to the plaintiff demonstrate that the officers violated a constitutional right. We're not really discussing that. We're discussing the second prong, which is whether the right was clearly established at the time. And that's why I think one looks at Munger and says, is Munger sufficient enough to say that the right was clearly established at the time when one has to prove that the state acted with deliberate indifference to a known or obvious danger? Isn't that the question? That is the question, Your Honor. And I don't think Munger is instructive for the reasons I've indicated. And you also have the situation here where she's letting him out to use the restroom and he walks away. She's got to make a decision. Do I have grounds to detain him? Can I bring him back into this car? And I would argue that- And a known or obvious danger. Yeah. I mean, known or obvious danger that one would, even given that he was not fully capable, even given that, that he would go from that place and go jump on a train and get run over. That's the known or obvious danger. I don't see who would know that the train was going to go by, who would know he was going to go do it. I mean, I'm just trying to make you focus on that issue. Wouldn't it be the case though that they would know that if the person also knew that the person was withdrawing at the time? So a person, clearly someone not in their full faculties and putting them in front, it's kind of like putting someone in front of I-5 with passing cars going by and the hospital is on the other side and said, okay, go ahead. There you go. Go, get out. Someone who's clearly not well and saying, oh, I didn't know the possibility that this person could have crossed right across the freeway here. I don't think it's a known and obvious danger that because there is a train, even if he's going to walk across to where she thinks the hospital is, that that's still a known and obvious danger because the average person is not going, is going to wait for the train to go by before crossing, if he even chose to go that direction. He indicated multiple times to her he didn't want to go to the hospital. So it wasn't even a known to her that that was where he would be headed towards that train. It was just, he wanted out of her car. Let me see. And I, you know, there's just the unique circumstances of this case just don't present any other case authority that was clearly established on the time that would have let a reasonable officer know how to respond in these circumstances. And then moving on to the Monell claim that was discussed, there is no pattern in practice here. But there is a pattern of giving courtesy rides. They're allowed, they're constitutional, there's nothing unconstitutional about it. The fact that two different cases over a decade resulted in some kind of injury does not make the entire practice unconstitutional unconstitutional, nor does it put the county on notice that they needed to provide new or different training. The examples given in the brief, the Hardin matter was an individual that was let out at a parking lot of a hospital. So it, you know, to say that that required new and different training, it's just not there. And it was 12, over 12 years ago, I believe. Pleasant versus Miranda, that person was dropped off at a motel where they asked to several hours later was hit by a car and the court properly found there was no connection there with the courtesy ride and the injury. So there's nothing that's indicating that courtesy rides are creating any kind of danger to the public in the manner that they're being used by the county of San Bernardino. Counsel, what do I do with the statement that she made, the officer made that she said, you just told me you're withdrawing. And here's the critical part that I don't know. And maybe you can help me understand this part. She says, I'm not going to drop you off on the side of the road. You just told me you're withdrawing. I'm not going to let you on the side of the road. Can you help me understand what I do with that statement? At that time, she is trying to find a suitable place to drop him off. And then he continues to insist and now he's going to defecate in her car and makes motions to do that. She does not want keep him in her car and have him defecate on himself. And now she's in a spot where she can pull over. She's not on the main highway anymore. She's on a side road where she can safely let him out. Right. But in connection to what she's saying, it's not just, I'm not going to let you on the side of the road. So she's not just saying that. She's saying, you just told me that you're withdrawing. So she's clearly about his state of mind, his inability, for whatever reason, to appreciate the circumstances based upon his withdrawal. She's saying that, she said that. And then she said immediately, I'm not going to drop you on the side of the road. Because, essentially, because of that. What do I make with that? What do I do with it? I would say that the circumstances had changed and she had to let him out. So because she didn't want him to go to the bathroom on himself. That would not be a pleasant thing for him. And when he walks away, she doesn't have authority to go after him. I see. She's trying to get him somewhere where she can drop him off. And he dictates the circumstances that change that. And there's no clearly established law that said she shouldn't let him out at that point. Or that the train was going to be a danger to him, which I think is crucial part. It just appears to me that that statement, she recognized that he's not well. And she's not going to put him in danger. That recognize seems to suggest she's well aware that putting him on the side of the road while withdrawing is an extremely bad idea. That's to suggest that her awareness of that. I would take that statement. If you're taking it in the light most favorable to the plaintiff and first summary judgment purposes, you would have to concede that. But it still goes to what is going on at the time that she lets him out and having to let him go and whether the train was foreseeable in these circumstances just because he was withdrawn. And then we got a few seconds left. We would also respectfully request that the court affirm the finding that the as a judgment, a matter of law onto the on the negligence claimed under the superseding cause affirmative defense. And also that there was no legal duty when this injury occurred is set forth more fully in the brief. All right. Thank you, counsel. Thank you. I would like to address the last question that was just raised by the court. And also, I think it leads into the discussion that was had as to whether or not this was a foreseeable injury. I think those two really do go together. And I think deputies fight state when she said, I can't just leave you here on the side of the road because I know that you're withdrawing. I think that that is her vocalizing her knowledge of the danger to him in that situation. And I think that that's also coupled up with the fact that she falsified her catalog after this to indicate that she dropped him off at the hospital when, in fact, that did not occur. Her catalog actually stated that she dropped him off at the hospital and she did not do that. She entered that in her catalog after she had dropped him off by the train track. So I would submit that that also shows her knowledge that what she did in this situation was dangerous, because otherwise she would have just put in her catalog exactly what actually occurred. But she took steps to cover up her actions because she knew that they were inappropriate and dangerous for him. So I think that that shows her foreseeability of the danger in this situation. Also, I think that deputy fight saw him take steps in the direction of the train when she dropped him off. So it's not that she believed that he was just sitting on the corner or that he was moving in a different direction. She actually said that she watched him take several steps towards the train, that he was looking at the train when she decided to leave him there. So I think that that also helps inform the foreseeability of this harm, because she knew that he was walking towards that train, knew that he was under the influence or withdrawing from drugs, knew that he had made some not congruent statements to her and that he might have not been in the right mind, and that he was walking directly towards a known danger. I think all of that in totality, especially taken in the light most favorable to the plaintiff, establishes that there was some foreseeability of the harm that occurred. All right. Thank you, counsel. Absolutely. We thank both counsel for their arguments. The case just argued is submitted. Since we have submitted all of our cases for tomorrow, we are adjourned not just for the day, but for the week. Thank you. All rise.
judges: SMITH, BENNETT, MENDOZA